576 P.2d 122
**STATE of Arizona, Appellee,**

v.

**Ronald Paul BISHOP, Appellant.**

**No. 3569.**

Supreme Court of Arizona,
In Banc.

March 1, 1978.
Rehearing Denied March 21, 1978.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Diane M. DeBrosse, Asst. Attys. Gen., Phoenix, for appellee.

David A. Chamberlain, Prescott, for appellant.

HOLOHAN, Justice.

The appellant, Ronald Paul Bishop, was tried and convicted by a jury of first-degree murder on May 19, 1976. On June 18, 1976 following an aggravation-mitigation hearing pursuant to A.R.S. § 13–454(E), the trial judge sentenced appellant to death, finding that the offense had been committed in an especially heinous, cruel and depraved manner, and that no mitigating circumstances existed. This appeal followed.

Appellant Bishop, Fred Van Haelst, Catherine Leckliter and her two-year-old daugh-

ter met each other and the victim, Norman Troxell, at the Salvation Army Welfare Center in Phoenix on January 18, 1976. After deciding to travel together, the group left Phoenix for Bumble Bee, Arizona in Troxell's 1966 Chevrolet on January 20, 1976. Troxell was apparently a heavy drinker and was drunk throughout the group's travels in the Arizona desert.

On the morning of January 22, appellant Bishop instructed Van Haelst to tell Mrs. Leckliter and her daughter to take a walk far from the camp. This was accomplished.

Appellant next awakened the victim who was sleeping in the car, and asked him to look at the car's engine. He then asked the victim to inspect a broken light over the license plate at the rear of the automobile. While he stood at the rear of the car, appellant inflicted several blows to the back of the victim's head with a claw hammer. The appellant stated that Troxell fell but that he was not unconscious and that after Troxell fell, appellant removed Troxell's watch, wallet and shoes and tied his legs together with a rope.

The appellant testified that he and Van Haelst then dragged the victim toward an abandoned mine shaft, which was approximately 15 feet deep. The appellant denied that he threw the victim into the mine shaft, asserting instead that because the victim was alive and struggling, he fell into the shaft on his own. The appellant also testified that after he discovered that Troxell had not only fallen into the mine shaft but was apparently continuing to struggle, he threw rocks on top of the victim.

Appellant and Van Haelst next did what they could to clean up the area, by covering the bloodstains with mud and scattering the traces of their camp. They burned some of Troxell's belongings in the fire before extinguishing it, and later dropped the remainder of the possessions over a steep cliff. When Mrs. Leckliter returned with her daughter, they left in Troxell's car.

Appellant and his companions traveled to Oregon and later to Texas in Troxell's car. At some point during their journey, Mrs. Leckliter forged a bill of sale to Troxell's car.

Meanwhile, Troxell's body was discovered and upon identification, a nationwide bulletin for the car and its occupants was issued by the Yavapai County Sheriff's office. Appellant Bishop, Mrs. Leckliter and her daughter were apprehended near Houston, Texas; Van Haelst was apprehended in Texas several days later. Following a mandatory hearing before a Texas magistrate where he was informed of his *Miranda* rights and following questioning by Arizona authorities in Texas, appellant Bishop admitted his acts and agreed to conduct a videotaped "walk-through" of the crime at the scene for the authorities upon his arrival back in Arizona.

Based upon appellant's own statements and the testimony of law enforcement officers, the Yavapai County Grand Jury returned an indictment for first-degree murder on March 22, 1976. Appellant was subsequently arraigned and after a suppression hearing, his trial and conviction followed.

Appellant has raised the following issues for our consideration:

1. Whether the confession made by appellant in Texas should have been suppressed;

2. Whether appellant's statements at a videotaped "walk-through" of the crime were voluntary;

3. Whether the evidence presented was sufficient to sustain the trial court's sentence;

4. Whether sufficient mitigating factors existed so as to call for leniency in sentencing;

5. Whether imposition of the death penalty was excessive;

6. Whether the provisions of A.R.S. § 13–454 were unconstitutionally vague; whether the imposition of a death sentence constituted cruel and unusual punishment.

## 1. SUPPRESSION OF THE CONFESSION: THE PROSECUTOR'S TESTIMONY

Appellant has advanced the argument that it was improper for Mr. Kuebler, the

Yavapai County Attorney to have testified at the omnibus hearing in a case he alone was prosecuting. Additionally, appellant argues that the statement was not shown to be voluntary because the prosecutor was the only witness, other than the appellant, as to what transpired when appellant and the prosecutor were the only ones present. Appellant has not questioned the truth of the prosecutor's testimony, merely the fact of his testimony.

Appellant's contention is totally without merit because there was another witness to the conversation between appellant and the prosecutor, and the state proved the voluntariness of the confession independently through the testimony of that witness, Detective Stephens. Secondly, the prosecutor's testimony was given at the insistence of the appellant.

The Stephens testimony disclosed that after about an hour and a half of questioning by Kuebler in Texas, the appellant asked to speak with him alone. Stephens remained outside the interrogation room within easy hearing distance primarily out of concern for Kuebler's safety. Thus, Stephens was able to testify that once alone with Kuebler, appellant said, "I might as well tell you the truth. I was lying about that other statement." The appellant then proceeded to relate the details of the crime to the prosecutor, which details were later reduced to a written statement and signed by appellant.[1]

Detective Stephens also testified that he did not hear the prosecutor make any threats or offer any inducement for this statement. The appellant has never claimed either before the trial court or on appeal that any threats, or force, or offers were made to him for the statement.

■ Unlike the situation in State v. Holden, 88 Ariz. 43, 352 P.2d 705 (1960), the conversation alone with the prosecutor here was initiated by the appellant, and the state offered independent evidence of what took place between appellant and the prosecutor. Once the prosecution met its burden of showing that the confession was freely and voluntarily made, the defense was under an obligation to rebut. State v. Holden, 88 Ariz. 43, 352 P.2d 705 (1960). No evidence was presented by the defense at the suppression hearing. The only defense tactic was to call the prosecutor as an adverse defense witness to testify to facts already in evidence through Detective Stephens. The testimony of Kuebler merely corroborated that of Stephens and was at most cumulative.

■ The device of calling the prosecutor here at a pretrial hearing as an adverse defense witness will not be approved by this court as a means for disqualifying the prosecutor from continuing to conduct the case where the testimony, although relevant, is merely cumulative and not necessary to the defense of the case. Johnson v. State, 23 Md.App. 131, 142, 326 A.2d 38, 45 (1974), aff'd per curiam, 275 Md. 291, 339 A.2d 289 (1975). The wide latitude that the trial court gave the defense in questioning the prosecutor served to be more in the nature of additional discovery. There was no abuse of discretion in permitting Kuebler to continue to act as prosecutor in the case. The ruling that appellant's statement was voluntary was correct under the circumstances shown by the hearing.

## 2. THE VIDEOTAPED WALK–THROUGH

Upon appellant's return from Texas to Arizona, before he was incarcerated in the Yavapai County Jail, he participated in a videotaped walk-through of the crime at

---

1. The record reflects that appellant was given the required Miranda warnings at each stage of the questioning and before he gave his written statement.

As a further indication of the appellant's state of mind and his appreciation of the serious penalty he would face, we note the following exchange between appellant and the prosecutor which took place just prior to appellant's giving his written statement and which was testified to by Wallis and Stephens:

Appellant: Does the State of Arizona still use the electric chair?

Kuebler: No, Arizona uses lethal gas.

Appellant: Well, gas is not so bad.

the scene. In attendance were the appellant, Van Haelst, County Attorney Kuebler and several Yavapai County law enforcement officers. This videotape was admitted into evidence by the trial judge.

Appellant's main objection is that the *Miranda* warnings given him at the scene were not sufficient to support a knowing, voluntary and intelligent waiver of those rights on his part. Appellant has argued that the drive back from Texas with the Arizona law enforcement officers, and the fact of his attendance at the walk-through with only the prosecutor and the officers present were "derived coercion" on the part of the state depriving him of his free will.

There is no testimony to support this contention by appellant. In fact, there is an abundance of evidence which supports the opposite conclusion.

The appellant was apprehended in Texas and given the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) at the time of his arrest. The Texas Criminal Code provides that after arrest, an individual must be taken before a magistrate and formally advised of his rights before any statement given can be used as evidence against him in a court of law. Accordingly, appellant was taken before a magistrate within approximately four hours after his arrest. He was formally charged, again given his *Miranda* rights and he signed a statement acknowledging that he understood those rights.[2]

Some questioning occurred after the appearance before the magistrate, during which appellant told the Texas police that he would only admit to having stolen Troxell's car and to having had "a squabble" with the victim.

The appellant adhered to this statement the next day when questioned by County Attorney Kuebler. However, after being told that Van Haelst had been apprehended, the appellant asked to speak with Kuebler alone, and thereafter made a confession as set forth previously.

The following day, when appellant appeared before a Texas judge for an extradition hearing, the judge asked whether he agreed to return to Arizona to face murder charges. Appellant said, "Yes, sir, I made a mistake and I want to go back to take care of it."

It is against this background of the many constitutional warnings given appellant and the failure of appellant to produce any evidence of impropriety regarding this sequence of events at trial that we view appellant's claim that the videotaping was a "derived coercion" on the part of the authorities.

We find this contention, in the context of the record before us, to be without merit.

Appellant offered no evidence to suggest that his will was overborne. *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1974). The police testified that appellant's attitude throughout the taping was "cooperative." Sergeant Mart, who participated in filming the walk-through, testified on cross-examination at the suppression hearing to the following exchange which occurred just before the filming took place:

Mr. Hicks:. "At that time do you also mention to him that anything that he does in the way of physical actions will be used against him?"

Sgt. Mart: "Yes.

"Q So what did you say?

"A I told him what we had in mind, that we were going to have a walk-through and pictures would be taken on a sound tape.

"Q And did you tell him that if he did something in the way of physical movements that it would be used against him?

"A He told me that he had done wrong and he wanted to come over here and straighten it out."

There is no testimony to support the argument that appellant did not voluntarily

2. For the sake of brevity, we state here that the testimony and written evidence in the record reflect the fact that at each stage of his questioning and before any statements (written or oral) were taken, appellant was given the warnings mandated by *Miranda, supra.*

waive his rights at the scene. Appellant's own statement at the end of the tape belies his lack of understanding of the proceedings. Appellant said, "I broke the violation of my rights and wanted to get everything on tape and sound for the judge if I decided to have a closed hearing." [3]

Although he was later represented by an attorney, the record does not indicate that appellant requested the services of an attorney at any time prior to and including the videotaping.

■ We have previously held that *Miranda v. Arizona, supra,* does not require a policeman to go out voluntarily and obtain a lawyer for a defendant unless the defendant after being advised of his rights makes a specific request. *State v. Jenkins,* 111 Ariz. 13, 14, 522 P.2d 1090, 1091 (1974). We think that the same principle is applicable here. Once the police had repeatedly advised appellant that he had *inter alia* a right to remain silent, there was no duty for the police to tell him that he did not have to participate in the walk-through. Appellant's participation was, from the testimony in the record, voluntary. *State v. Edwards, supra.*

3. THE VOLUNTARINESS OF THE CONFESSION AND THE VIDEOTAPE

The common thread, of course, running through appellant's arguments on the admission of the confession and the videotape is voluntariness. For the reasons which follow, we conclude that both were legally voluntary, and therefore properly admitted into evidence by the trial court.

■■ We start from the premise that in Arizona confessions and statements are *prima facie* involuntary and the burden is on the state to show that they were freely and voluntarily made, and not the product of physical or psychological coercion. *State v. Edwards,* 111 Ariz. 357, 361, 529 P.2d 1174,

1178 (1974); *State v. Holden,* 88 Ariz. 43, 48, 352 P.2d 705, 709 (1960). However, the trial court's determination of their admissibility will not be upset on appeal, absent clear and manifest error. *State v. Jordan,* 114 Ariz. 452, 455, 561 P.2d 1224, 1227 (1976); *State v. Edwards,* 111 Ariz. 357, 361, 529 P.2d 1174, 1178 (1974).

■ A defendant has the constitutional right to object to the use of a confession and to have a fair hearing to resolve the issue of the voluntariness. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *State v. Smith,* 114 Ariz. 415, 419, 561 P.2d 739, 741 (1977).

The record discloses the following factors which we consider to be significant in our conclusion that the confession and videotape were voluntary and therefore validly admitted into evidence:

1) Appellant was repeatedly and continuously warned of his *Miranda* rights at all stages from his initial arrest in Texas through and including his incarceration in Arizona;

2) Appellant refused to answer some questions posed by interrogating officers, indicating that he understood his right to remain silent;

3) There is no evidence in the record that appellant requested counsel, or that he was denied counsel after being warned of his constitutional rights;

4) Appellant was not interrogated for long periods of time or in circumstances which would suggest that his will was in any way overborne;

5) There were no allegations of threats or promises or benefits alleged or testified to which would bear on the inducement of the confession.

Appellant did not put forth evidence at the suppression hearing to contest the admission of the confession, or to rebut the above factors.

---

**3.** Appellant's motivation for making the statement is not clear from the record because appellant offered no testimony on the issue. The prosecutor posited the theory that appellant had some fears about retribution from the victim's family and did not wish to appear in open court. There is no evidence to suggest that appellant's belief that he could control his appearance at trial was in any way induced by the prosecutor.

We hold that the confession and videotape were intelligently, voluntarily and knowingly made, and that their admission into evidence was therefore proper.

## 4. THE SUFFICIENCY OF THE MITIGATING FACTORS

The burden of establishing mitigating factors is on the defendant. A.R.S. § 13–454(B). *State v. Richmond*, 114 Ariz. 186, 198, 560 P.2d 41, 53 (1976), *cert. den.*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

In *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976), *cert. den.*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), we upheld the constitutionality of Arizona's death penalty statute under the U.S. Supreme Court's holdings in *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) and *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In *Proffitt*, the U.S. Supreme Court construed and found constitutionally sufficient a Florida sentencing statute which is indistinguishable from Arizona's statute.

We said in *Richmond* that the statutory system enacted by our legislature with regard to aggravating and mitigating circumstances, gives the trial judge the "adequate information and guidance" mandated by *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The narrow limits of the aggravating and mitigating factors which the trial judge is directed to consider insures that the death penalty will not be arbitrarily, capriciously or freakishly imposed. *State v. Jordan*, 114 Ariz. 452, 456–457, 561 P.2d 1224, 1228–1229 (1976). According to our law, the trial judge is bound, as are we, to consider only those aggravating and mitigating factors listed in the statute. A.R.S. § 13–454(D).

Under the circumstances, the trial judge was correct in refusing to consider

appellant's lack of a prior conviction as a mitigating factor under A.R.S. § 13–454(F).[4]

Appellant contended at trial (contrary to his confession) and at the mitigation hearing that he was under "unusual and substantial duress." He contended that he feared Troxell and that he murdered him in self-defense.

The evidence disclosed that appellant planned to kill Troxell for over a day before he did so because he wanted Troxell's car and he disliked Troxell's drinking habits. Troxell was struck between two and four times with a hammer by appellant. Once Troxell fell to the ground, the appellant immediately and systematically removed Troxell's shoes, his wallet and his money. Having accomplished that, appellant hogtied Troxell's legs, dragged him to a mine shaft and returned shortly thereafter to drop rocks and dirt on the victim, who lay struggling at the bottom of the hole. Subsequently, appellant cleaned up the campsite by covering the bloodstains with dirt, burned some of Troxell's possessions and threw the rest over a cliff. When the group left the site for town, appellant took the time to give a ride to a stranded motorist. These actions do not, in our opinion, indicate signs of duress.

From an independent review of all the factors involved here, we find no mitigating factors sufficiently substantial to outweigh the aggravating circumstances. *State v. Blazak*, 114 Ariz. 199, 206, 560 P.2d 54, 61 (1977); *State v. Richmond*, 114 Ariz. 186, 198, 560 P.2d 41, 53 (1976), *cert. den.*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *State v. Jordan*, 114 Ariz. 452, 456, 561 P.2d 1224, 1228 (1976).

## 5. THE EXCESSIVENESS OF THE DEATH PENALTY IN THIS CASE

Appellant has urged that the death sentence was excessive in this case, because his

---

**4.** We have read those cases cited to us by appellant which hold that a defendant's conduct should be considered by the trial court in sentencing. While none of the cases are factually relevant here, we note as well that each case was decided before the present A.R.S.

§ 13–454 became law in 1973. Those prior cases obviously are not applicable under the current law which clearly mandates what factors are to be considered aggravating and mitigating. A.R.S. § 13–454(D).

sentence was not comparable to those of Van Haelst who received a forty to sixty-year sentence and Leckliter, who received six months in the county jail. Both Van Haelst and Leckliter's sentences resulted from a negotiated plea bargain.

 We have discussed our view of the absence of mitigating factors here and we will not repeat them. We have consistently held that where there are no mitigating factors and an aggravating factor does exist, the sentence of death is within the statute and neither excessive nor unconstitutional. *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), *cert. den.,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *State v. Blazak,* 114 Ariz. 199, 560 P.2d 54 (1977); *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704 (1977); *State v. Holsinger,* 115 Ariz. 89, 563 P.2d 888 (1977).

As to appellant's objection to the Van Haelst and Leckliter sentences, we think that the practice of plea bargaining in a criminal case is neither unusual nor unconstitutional. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

It is true that Van Haelst was indicted for first-degree murder with Bishop. Leckliter was separately indicted for felonious theft of Troxell's automobile. The crucial mitigating factor in both Van Haelst's and Leckliter's cases is found in A.R.S. § 13–454(F)(3):

He was a principal, under § 13–452, Arizona Revised Statutes, in the offense, which was committed by another, but his participation was relatively minor, although not so minor as to constitute a defense to prosecution.

We think that the key factor in this section is that an individual's *relative participation* in the crime is a mitigating factor to be taken into account. When we look at the relative participation here of Van Haelst, Leckliter and Bishop and compare their sentences, we see nothing excessive in the sentence imposed on appellant. *State v. Holsinger,* 115 Ariz. 89, 98-99, 563 P.2d 888, 897–898 (1977).

## 6. CONSTITUTIONALITY OF THE DEATH PENALTY

We have previously held that Arizona's death penalty statute is constitutional and we feel that there is no need for further discussion of that issue. *See State v. Richmond, supra.*

Pursuant to A.R.S. § 13–1715 we have searched the record for fundamental error, and find none. The judgment and sentence of the trial court are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.