Willie Lee **RICHMOND**, Petitioner,

v.

**Harold J. CARDWELL and the Attorney General of the State of Arizona, Respondents.**

Jose Jesus **CEJA**, Arizona State Prison Inmate No. 33603, Petitioner,

v.

Harold **CARDWELL**, Respondent,

and

The Attorney General of the State of Arizona, Additional Respondent.

**Nos. CIV 77–703 PHX–CAM, CIV 78–96 PHX–CAM.**

United States District Court, D. Arizona.

April 21, 1978.

---

John M. Neis, Pima County Public Defender, Tucson, Ariz., Brice E. Buehler, Phoenix, Ariz., for petitioner.

John A. LaSota, Jr., Acting Atty. Gen., for respondents.

John P. Frank, Lewis & Roca, Phoenix, Ariz., amicus curiae.

## OPINION and ORDER

MUECKE, District Judge.

The issues have been presented to this Court by way of two separate petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254, submitted by Petitioners Willie Lee Richmond and Jose Jesus Ceja, both of whom have been convicted of first degree murder and sentenced to death pursuant to A.R.S. § 13–454. These petitions have been treated together for the reason that they both raise substantially the same issues regarding the constitutionality of the Arizona death penalty cited above. Also participating on behalf of Paul William Jordan (also convicted of first degree murder and sen-

tenced to death pursuant to the above statute), in the capacity of amicus curiae, are the NAACP Legal Defense Fund and the American Civil Liberties Union.

The primary issue raised and considered is the question of whether the Arizona death penalty statute, § 13–454, fails to meet constitutional standards by not adequately taking into consideration the character and record of the individual offender.

The petitioners argue that the mitigating factors listed in the statute are too narrow and fail to include considerations of the defendants' character, thereby making the statute violative of the Eighth Amendment of the United States Constitution.

## MITIGATING FACTORS

The respondents argue that the statute was designed so as to comply with constitutional standards by not allowing unbridled discretion in the sentencing body, and all relevant factors could be considered under the statute in its present form.

■ Based on an analysis of pertinent decisions of the United States Supreme Court, the Arizona statute in question and cases by the Arizona Supreme Court construing it, and after hearing oral argument by the parties made to this Court on April 10, 1978, and after consideration of the pleadings and memoranda filed herein, it is the opinion of this Court that the Arizona death penalty statute is too restrictive regarding what mitigating factors the sentencing authority must consider and therefore violates the Eighth and Fourteenth Amendments of the United States Constitution.

The United States Supreme Court in *Furman v. Georgia*, 408 U.S. 230, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), required state legislatures to devise statutory guidelines that would eliminate excessive discretion on the part of the sentencing authority and thereby avoid arbitrary and capricious application of the death penalty.

Since *Furman*, there have been a succession of United States Supreme Court opinions, all considering, *inter alia*, the question

of what the nature of the sentencing authority's function is and what mitigating factors should be considered, so as to guarantee that imposition of the death penalty follows only after enlightened consideration of the individual, reflecting the fundamental respect for humanity that is intrinsic to the Eighth Amendment. See generally *Trop v. Dulles*, 356 U.S. 86, 100, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion).

The death penalty is a unique sanction, and as stated by Mr. Justice Stewart, "A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind." *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

■ It is the consistent and emphatic policy of the United States Supreme Court, as expressed in the cases before and after *Furman*, that the sentencing authority be well informed, and that the circumstances of the offense, along with the character, record, and propensities of the offender must be given careful consideration before the death sentence is imposed. In *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the court stated the following: "We have long recognized that '[f]or the determination of sentences, justice generally requires . . . that there be taken into account the circumstances of the offense together with the character and propensities of the offender.' *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, [58 S.Ct. 59, 61, 82 L.Ed. 43] (1937)." *Id.* at 189, 96 S.Ct. at 2932. Similar language is used with equal force in *Proffitt v. Florida*, 428 U.S. 242, 258, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 296–297, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) [citing *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)]; *Roberts v. Louisiana*, 428 U.S. 325, 333–334, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); and *Roberts v. Louisiana*, 431 U.S.

633, 97 S.Ct. 1993, 1996, 52 L.Ed.2d 637 (1977). The *Roberts* case held that the Louisiana statute was unconstitutional for failure to allow consideration of "particularized mitigating factors." Further, the court stated, "it is essential that the capital sentencing decision allow for consideration of whatever mitigating circumstances may be relevant to either the particular offender or the particular offense." *Id.* 1996. *Cf. Jurek v. Texas*, 428 U.S. 262, 273, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) [sentencing authority can consider whatever mitigating evidence the defense submits].

*Gregg, supra* at footnote 38 citing *Woodson* stated, "Indeed we hold elsewhere today that in capital cases it is *constitutionally required* [emphasis added] that the sentencing authority have information sufficient to enable it to consider the character and *individual circumstances of a defendant* [emphasis added] prior to imposition of a death sentence."

It is thus beyond question that an individual offender's particular circumstances and character must be taken into consideration. However, the question becomes what specific considerations underlie the character and circumstances of a person convicted of first degree murder.

The Arizona Legislature has listed four mitigating considerations in A.R.S. § 13–454(F). Those are: (1) His capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired but not so impaired as to constitute a defense to prosecution. (2) He was under unusual and substantial duress, although not such as to constitute a defense to prosecution. (3) He was a principal, under § 13–452, Arizona Revised Statutes, in the offense, which was committed by another, but his participation was relatively minor, although not so minor as to constitute a defense to prosecution. (4) He could not reasonably have foreseen that his conduct in the course of the commission of the offense for which he was convicted would cause, or would create a grave risk of causing, death to another person.

Factors absent in this statute are (to name a few), considerations of the defendant's age at the time the crime was committed, his prior record, and the amount and nature of his cooperation with authorities, whether his capacity at the time of the crime was affected by mental defect or intoxication. Theoretically, if any of the above were relevant they might by implication be considered under one of the four mitigating factors listed in the Arizona statute. However, the Arizona Supreme Court has held otherwise. In *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1977), the court held that the four mitigating factors in A.R.S. § 13–454 are exclusive. The court eliminates the possibility of implying relevant mitigating factors from the ones listed, by stating "we hold that subsection D authorizes the trial court to take into account only those mitigating circumstances enumerated in subsection F." *Id.* at 50. The Arizona Supreme Court's holding is obviously an attempt to conform the statute's interpretation to constitutional requirements as these were understood in light of the United States Supreme Court decisions then available by preventing the Arizona death penalty statute from being unconstitutionally ambiguous. The result is that certain considerations that may have fundamental relevance are, if not literally and specifically listed in the statute, ipso factor not subject to consideration.

This trend toward narrowing the relevant mitigating factors that can be considered is forcefully demonstrated in *State v. Bishop*, 118 Ariz. 263, 576 P.2d 122 (filed March 1, 1978) where it was ruled that lack of a prior conviction could not be considered for the reason that it was not listed among the mitigating factors in A.R.S. § 13–454(F). The court stated "According to our law, the trial judge is bound, as are we, to consider only those aggravating and mitigating factors listed in the statute." A.R.S. 13–454(D). Under the circumstances, the trial judge was correct "in refusing to consider appellant's lack of a prior conviction as a mitigating factor under A.R.S. § 13–454(F)." *Id.* at 269, 576 P.2d at 128. The

respondents argue that the words "under the circumstances" do not refer to the paragraph preceding them but rather are a reference to the particular facts of the case. This possibility is foreclosed by footnote 4 of *Bishop* (referring to the above quote), wherein the court stated, "We have read those cases cited to us by appellant which hold that a defendant's conduct should be considered by the trial court in sentencing. While none of the cases are factually relevant here, we note as well that each case was decided before the present A.R.S. § 13–454 became law in 1973. Those prior cases obviously are not applicable under the current law which clearly mandates what factors are to be considered aggravating and mitigating. A.R.S. § 13–454(D)." *Id.* at 269, 576 P.2d at 128.

The inescapable conclusion is that the Arizona Supreme Court in construing the statute in question and in an attempt to prevent it from becoming vague and ambiguous, has defeated the respondent's position that the factors which have been omitted from the death penalty statute can be considered, where relevant, as being implied by the four enumerated mitigating circumstances. The mitigating circumstances that can be considered are confined to a literal reading of those listed in the statute. The effect is to exclude consideration of other relevant factors relating to the character and propensities of the offender.

The United States Supreme Court has repeatedly suggested those factors which focus on the characteristics of the person who committed the crime and which should be considered in mitigation before imposition of the death penalty. Included are such factors as "Does he have a record of prior convictions for capital offenses? Are there any special facts about this defendant that mitigate against imposing capital punishment (e. g., his youth, the extent of his cooperation with the police, his emotional state at the time of the crime)." *Gregg v. Georgia, supra,* 428 U.S. at 197, 96 S.Ct. at 2936; see *Proffitt v. Florida, supra,* at 251–253, 96 S.Ct. 2960; The Modern Penal Code, Uniform Laws Annotated § 210.6(4) (1974).

In *Roberts v. Louisiana, supra,* 97 S.Ct. at 1996, the court states:

Circumstances such as the youth of the offender, the absence of any prior conviction, the influence of drugs, alcohol or extreme emotional disturbance, and even the existence of circumstances which the offender reasonably believed provided a moral justification for his conduct are all examples of mitigating facts which might attend the killing of a peace officer and which are considered relevant in other jurisdictions.

The Arizona Legislature, in enacting a Revised Criminal Code to become effective October 1, 1978, has added to the list of mitigating circumstances, consideration of the defendant's age. A.R.S. § 13–902(G)5. However, this will not be a factor to be considered until October 8, 1978, and therefore was not applied in the present cases.

### JURY DETERMINATION OF DEATH PENALTY

■ The petitioners further argue that the United States Constitution and tradition require that a jury determine the correctness of the death penalty. This issue has been resolved by the case of *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), wherein the court stated:

This Court has pointed out that jury sentencing in a capital case can perform an important societal function [cite omitted], but it has never suggested that jury sentencing is constitutionally required. And it would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases. *Id.* at 252, 96 S.Ct. at 2966.

### FACTUAL DETERMINATION BY JURY

■ The petitioners argue that the existence of aggravating and mitigating factors

**524**

must be determined by a jury. This argument lacks merit as, *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), is distinguishable in that the conviction in that case was the basis for a new proceeding that is actually a new charge, whereas in the case at hand, the conviction of a specific crime is merely the basis for sentencing under the statute that provides a possible penalty for that crime.

## DISCRIMINATION BECAUSE OF SEX AND POVERTY

Petitioner Richmond's co-hort, a female, was given immunity for her testimony. Petitioner objects to the fact that it is in the prosecutor's discretion to determine who will be prosecuted, and invariably it is the male. It is pointed out that death row consists of men only.

Respondent argues that a finding as to a factual opinion shall be presumed to be correct unless established to be error. 28 U.S.C. § 2254(d). The Arizona Supreme Court in *State v. Richmond, supra,* found that there was corroboration for the accomplice's testimony that the petitioner was the planner and perpetrator of the crime. This corroboration was found to be overwhelming. Reviewing the record, the petitioner has not established error on the part of the state court. 28 U.S.C. § 2254(d).

## APPLICATION OF DEATH PENALTY TO FELONY–MURDER.

■ Petitioner Richmond has not cited authority for, but argues persuasively, that the death penalty is disproportionately severe and unconstitutional for one who has not taken life, nor attempted nor intended to take life. Petitioner Richmond argues that crimes such as rape, attempted murder or assault with intent to kill are more serious than the felony petitioner was convicted of, because they involve direct, deliberate and life threatening invasions of the physical integrity of another human being, yet do not result in punishments remotely as severe as death.

It is also argued that there has been a de facto abolition of the death penalty for non-triggermen. The basis of this thesis is a study of appellate opinions concerning cases of 135 persons who were executed since 1960. The petitioner noted that none of these cases involved a situation where the executed person did not directly participate in the homicide. This latter argument is a matter of speculation. The petitioner has taken an isolated set of facts and extrapolated a legal conclusion. Petitioner's results are more likely to be a matter of coincidence rather than having legal significance. Further, petitioner's situation is a poor set of facts on which to apply this study as the evidence at trial showed that the petitioner was driving the vehicle that caused the death of the victim, and therefore the court found that he did directly participate in the homicide.

Regarding the first argument, the obvious difference between felony-murder and the crimes petitioner cites is that the one that is subject to the possibility of the death penalty results from the commission of a homicide, while the others do not. Further, behind the felony-murder crime is the rationale that there are certain crimes that pose such a great danger to others, that the perpetrator becomes strictly responsible for the safety of his victim.

## BURDEN OF PROVING MITIGATING CIRCUMSTANCES

■ It is claimed that the Arizona death penalty statute is unconstitutional in that it places the burden of proving mitigating circumstances on the defendant. It is argued that *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), held that where the sole function of proof distinguishing between one crime or another is to control the penalty, then the burden is on the state rather than on the individual to prove the absence of those circumstances which would warrant a lesser penalty. That case in fact held that it was a violation of due process for the burden to be on the defendant in the course of a trial to prove that he acted in the heat of passion, and the burden in a trial to prove the

defendant did not act in the heat of passion should properly be placed on the prosecution.

In the present case, the crime has been proved. The sentencing procedure contained in the Arizona statute whereby the defendant must prove mitigating circumstances does not involve proving the elements of a crime during the course of a trial, but goes *solely* to *sentencing.*

## STATE SUPPRESSION OF MITIGATING EVIDENCE

■ It is argued that the statute in question unconstitutionally permits the state to suppress mitigating evidence. A.R.S. § 13–454(B) states that "any information relevant to any of the mitigating circumstances set forth in subsection F *may* [emphasis added] be presented by either the prosecution or the defendant . . ."

This provision is objected to on the basis that it authorizes the prosecution to unilaterally decide whether to offer mitigating information which it has in its possession, and is thus violative of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *U. S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1946). *Brady* held that, upon request, the prosecution may not suppress evidence that is favorable to the accused where the evidence is material either to guilt or *punishment* (emphasis added). The petitioners appear to be putting an unusual and unintended meaning on the words of the statute. Theoretically it is the defendant who would be in the best position to determine what mitigating factors exist in his or her favor, but either party may present such evidence regardless of evidentiary restrictions. There is no reason to believe that the Legislature intended to place an undue burden on the defendant by using the word "may" as opposed to the word "must." There is also no reason, in terms of the Arizona death penalty statute, why the defendant could not request and the court order all "Brady" materials to be produced by the prosecution.

## PETITIONER RICHMOND'S ARGUMENTS REGARDING LOWER COURT ERRORS

Petitioner Richmond also argues that admission of his statement at trial was error for two reasons. First, because it violated petitioner's right to counsel. The lower court found that the petitioner waived his right to counsel. Petitioner argues that once counsel has been appointed, any interrogation of a defendant by law enforcement officers must include the presence of that attorney to assist the defendant in waiving the right to counsel. Plaintiff cites *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) in support of this proposition.

*Brewer* is distinguishable from the present case for several reasons. In *Brewer* the issue was the right to counsel at or after judicial proceedings had already been initiated against a defendant. The defendant in that case had already been arraigned. In petitioner's case, he was not yet arraigned. *Brewer* did not hold that a defendant could never waive right to presence of counsel. In *Brewer,* the defendant was told by his attorney not to say anything, and he, himself, told the interrogating officers that he would not say anything. The officers proceeded to question the defendant anyway (unlike the present case) and without giving any *Miranda* warning. The court in *Brewer* held that there were no circumstances in the record that provided a reasonable basis for concluding the defendant waived his right to counsel.

■ In the present case, the questioning was prearraignment, and *Miranda* warnings were given. Petitioner was informed he had a right to counsel but stated he wanted to give his side of the story. *Miranda* warnings were given before each statement was made. The record in this case demonstrates a reasonable basis upon which to conclude that petitioner waived his right to counsel.

Petitioner argues that his case is similar to *U. S. v. Brown,* 551 F.2d 639 (5th Cir. 1977). In that case the defendant had been indicted and was on her way to a prelimi-

nary hearing when she was stopped by an agent, given *Miranda* warnings and interrogated. The court held that the right to counsel can be waived, however, the court added that the agent had an additional obligation to inquire whether the defendant was represented by counsel. The court found this additional obligation existed because the facts of the case demonstrated that at that point the case had shifted from investigatory to accusatory. The *Brown* case is distinguishable from the one at bar for the reason that in *Brown,* the investigatory process had advanced far beyond the stage that petitioner is objecting to, viz, in the instant case, the petitioner was merely served with a warrant for arrest.

 Richmond's second argument is that the waiver of counsel and right against self-incrimination were not voluntary and not knowingly and intelligently made. The Supreme Court in *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), held that the record of the voluntariness hearing does not support the petitioner's allegation, and the statements were found to be voluntary. There being no evidence to the contrary, this Court presumes the findings of the Supreme Court in *Richmond* to be correct. 28 U.S.C. § 2254(d).

Finally, the petitioner argues that he was unconstitutionally denied the right to a fair trial by the trial court's refusal to instruct the jury on the petitioner's theory of defense.

The court in *Richmond, supra,* made a factual determination, based on the evidence, that the robbery was not complete at the time the homicide occurred, and that the death was the direct and proximate result of the robbery. As a determination has been made after a full, fair, and adequate hearing in state court, this Court presumes the factual determination to be correct pursuant to 28 U.S.C. § 2254(d).

## CONCLUSION

All of petitioners' attacks on their convictions must fail, except their claim that the Arizona death penalty statute is unconstitutional.

It is therefore concluded that A.R.S. § 13–454 is on its face in violation of the Eighth and Fourteenth Amendments of the United States Constitution for failing to allow for a consideration of relevant mitigating factors of an individual's character by the sentencing court when a determination is to be made whether or not the death penalty should be imposed.

The defendants are hereby enjoined from imposing the death penalty on petitioners pursuant to A.R.S. § 13–454.