## 20606

The STATE, Respondent, v. Thomas Earl RODGERS, Jr. Appellant. The STATE, Respondent, v. Rand Brian CASON, Appellant. The STATE, Respondent, v. James E. MacPHEE, Appellant. The STATE, Respondent, v. Archie ALLEN, Appellant. The STATE, Respondent, v. Charles WAKEFIELD, JR., Appellant. The STATE, Respondent, v. Donald H. GASKINS, Jr., Appellant.

(242 S. E. (2d) 215)

*John W. Williams* of *Williams & Williams,* Columbia, *for Appellant, Rodgers,*

G. *Dan Bowling,* Charleston, *for appellant Cason.*

*John K. Grisso, U. S. Atty.,* Columbia, and *O. Grady Query,* Charleston, *for appellant MacPhee.*

*Franklin R. DeWitt,* Conway, *Robert Hallman* and *Matthew J. Perry,* Columbia, *for appellant Allen.*

*John I. Mauldin,* Greenville, *for appellant Wakefield.*

*Ernest B. Hinnant* and *John S. DeBerry,* Florence, *for appellant Gaskins.*

*Daniel R. McLeod, Atty. Gen.,* and *Asst. Attys. Gen. Brian P. Gibbes, Joseph R. Barker* and *Robert N. Wells, Jr., Staff Atty. Sally G. Young,* Columbia, and *Solicitors James C. Anders,* Columbia, *Copers G. Barr, III,* Charleston, *Norman E. Fogle,* Orangeburg, *J. M. Long, Jr.,* Con-

way, *William Wilkins, Jr.,* Greenville, *T. Kenneth Summerford,* Florence, *Asst. Sol. Jim Dunn,* Conway, *for respondent.*

*John L. Davidson,* Columbia, *amicus curiae.*

*American Civil Liberties Union,* Columbia, *amicus curiae.*

February 15, 1978.

LITTLEJOHN, Justice:

These six cases, which have been consolidated for purposes of this proceeding, are before us pursuant to petitions filed by the State of South Carolina, *ex relatione* Daniel R. McLeod, Attorney General. In order to better understand the issues before us, a brief recitation of the recent legislative and judicial history of the criminal murder law in South Carolina follows:

## THE OLD ACT

For several decades prior to 1974, murder was defined as found in § 16-51, Code of Laws of South Carolina (1962) [1], as: " 'Murder' is the killing of any person with malice aforethought, either express or implied." The punishment for murder, as set forth in § 16-52, provided for the punishment of death unless the jury recommended the defendant to the mercy of the court, whereupon the punishment was reduced to life imprisonment. In 1972, in the case of *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (2d) 346, the United States Supreme Court ruled that capital punishment statutes, such as ours, which gave to the judge or jury complete discretion in determining whether a defendant should receive the penalty of death or a lesser punishment, violated the Eighth and Fourteenth Amendments to the Constitution of the United States. In the case of *State v. Gibson,* 259 S. C. 459, 192 S. E. (2d) 720 (1972), we recognized the *Furman* ruling and remanded Gibson to the lower court for resentencing to life imprisonment under § 16-52.

---

[1] Now codified as § 16-3-10 of the 1976 Code.

## THE ACT OF 1974

In an effort to continue capital punishment as a constitutional penalty for murder, the General Assembly, on July 2, 1974, amended the punishment provision as set forth in § 16-52. It was codified in the supplement to the Code of 1962. We refer to this as the Act of 1974. This amended version of § 16-52 made the imposition of the death penalty mandatory upon a finding of murder committed in specific instances. In July, 1976, the United States Supreme Court ruled that statutes, such as ours, which provided for mandatory death sentences in specified circumstances and which left neither judge nor jury discretion to impose a lesser sentence, were violative of the Eighth Amendment prohibition against cruel and unusual punishment. *Woodson v. North Carolina,* 428 U. S. 280, 96 S. Ct. 2978, 49 L. Ed. (2d) 944, and *Roberts v. Louisiana,* 428 U. S. 325, 96 S. Ct. 3001, 49 L. Ed. (2d) 974. Our Court recognized this ruling in the case of *State v. Rumsey,* 267 S. C. 236, 226 S. E. (2d) 894 (1976), and held that the Act of 1974 insofar as it provided for death as punishment for murder, was constitutionally defective and could not stand. We set aside the death sentence and remanded Rumsey for resentencing to life imprisonment.

## THE ACT OF 1977

In another effort to continue the death penalty as punishment for murder, the General Assembly, on June 8, 1977, again amended § 16-52 [2]. We refer to this as the Act of 1977. It was obviously patterned after statutes, in other states, which have been declared constitutional by the United States Supreme Court. It provides for a bifurcated trial, such that the jury first determines the defendant "guilty" or "not guilty" of murder. If the defendant is found guilty, the punishment issue is then submitted to the jury, which determines whether the punishment shall be death or life imprisonment. This act provides a number of procedural safeguards

---

[2] Now codified as § 16-3-20 of the 1976 Code (Supp. 1977).

at each stage of the trial not previously afforded defendants accused of murder. We will refer to these later.

The definition of murder, as set forth hereinabove, has remained constant. Under the old Act, the Act of 1974 and the Act of 1977, life imprisonment as a punishment for murder has been provided and the constitutionality of such penalty is not under attack. Only the *manner* of determining that the death penalty should be imposed has been held unconstitutional.

The six defendants, Rodgers, Cason, MacPhee, Allen, Wakefield and Gaskins, were tried under the Act of 1974 for separate offenses, and sentenced to death. The exact status of the case of each will be indicated hereinafter. In August, 1977, the Attorney General filed petitions with this Court, praying that each of the above-named defendants be remanded to the trial court for the purpose of having that court resentence each under the provisions of the Act of 1977, after a jury trial on the sole issue of death or life imprisonment.

It is obvious that the Attorney General, by bringing the petitions, desired to clarify the law and assure the validity of the sentences imposed, or to be imposed, in these cases. The petitions were inspired by a ruling of the United States Supreme Court in *Dobbert v. Florida,* 432 U. S. 282, 97 S. Ct. 2290, 53 L. Ed. (2d) 344 (1977). In that case, Dobbert had been charged with murder at a time when Florida had a capital punishment statute which gave the jury complete discretion in determining whether the death penalty should be imposed. Prior to the trial, Florida's capital punishment statute was invalidated by *Furman v. Georgia, supra,* and a new capital punishment statute, similar to our Act of 1977, was enacted. Dobbert was subsequently tried, convicted and sentenced to death under the new procedures set forth in Florida's new statute. The United States Supreme Court, in upholding Dobbert's conviction and sentence, ruled that it was proper to subject Dobbert

to punishment under the new statute, since the new statute was only procedural and was in effect at the time of the trial, even though not at the time of the commission of the crime.

All of the six defendants committed murder and were tried and sentenced to death after the effective date of the Act of 1974, but prior to the ruling of the Supreme Court in *Woodson* and *Roberts,* and prior to the effective date of the Act of 1977. Both Rodgers and Cason were resentenced to life imprisonment after the effective date of the Act of 1977. See *State v. Rodgers,* S. C. 235 S. E. (2d) 808 (1977). Cason was remanded for resentencing by unpublished memorandum opinion No. 77-61, filed June 15, 1977. MacPhee was remanded for resentencing after the passage of the Act of 1977, but has not yet been actually resentenced. Unpublished memorandum opinion No. 77-78, filed July 6, 1977. Allen, Wakefield and Gaskins have not yet been resentenced. See *State v. Allen,* 266 S. C. 175, 222 S. E. (2d) 287 (1976), *cert. granted, judgment vacated and remanded,* 432 U. S. 902, 97 S. Ct. 2944, 53 L. Ed. (2d) 1074 (1977). See, also, *State v. Wakefield,* 242 S. E. (2d) 220 and *State v. Gaskins,* S. C., 242 S. E. (2d) 219, filed herewith.

Briefly stated, it is the position of the Attorney General that the circuit courts which resentenced Rodgers and Cason to life imprisonment, in accordance with *Rumsey,* were without authority to do so, since at the time Rodgers and Cason were resentenced, the Act of 1977 had been passed. The Attorney General argues that the Act of 1977 prescribed the manner in which defendants convicted of murder could be sentenced, and that Rodgers and Cason should have been resentenced pursuant to the provisions of the Act of 1977.

As for MacPhee, the Attorney General argues that at the time he was remanded for resentencing, the Act of 1977 prescribed the manner in which defendants convicted of murder could be sentenced, and that therefore he must be resentenced pursuant to the Act of 1977.

As for Allen, Wakefield, and Gaskins, the Attorney General concedes that their death sentences, received under the Act of 1974, are invalid, and argues that they must be resentenced pursuant to the Act of 1977.

In support of its request that these six defendants be resentenced pursuant to the Act of 1977, the State places principal reliance on the recent case of *Dobbert v. Florida, supra. Dobbert,* however, is factually dissimilar from the instant cases, and it can be of no help to the State in these cases. Dobbert's trial was conducted and sentence imposed under a valid capital punishment statute, even though the crime was committed when an invalid capital punishment statute was in effect. Thus, Dobbert had the benefit of all trial safeguards of the new statute and a separate sentencing proceeding following the guilt phase of his trial. By contrast, in the cases at bar, not only were the crimes committed at a time when an invalid capital punishment statute was in effect, but each defendant was tried and sentenced to death under the statute.[3] Thus, the defendants did not receive the benefit of a bifurcated trial, nor were they afforded the additional safeguards which are provided by the Act of 1977. We are therefore of the opinion that this factual distinction renders *Dobbert* inapplicable to the cases now before us.

The Act of 1977 includes numerous procedural provisions which afford a defendant significantly greater protection at each stage of the trial than has heretofore been provided criminal defendants. These procedural safeguards may be summarized as follows:

(1) The State must give 30 days notification prior to the trial of the case of its intention to seek the death penalty; defense counsel is also excused from all trial duties ten days prior to the term of court in which the trial is to be held. (§ 16-3-26(A))

(2) The court shall appoint two attorneys to represent the defendant if he is unable to afford counsel, and the county

---

[3] Counsel for the State conceded this factual distinction in oral argument.

in which the indictment was returned shall pay attorneys' fees up to $1,500.00 (§ 16-3-26(B))

(3) The court shall authorize up to $2,000.00 for investigative, expert or other services, if found to be necessary. § 16-3-26(C))

(4) The attorney for the defense shall be allowed to examine any person called as a juror. (§ 16-3-26(D))

(5) Specific procedures are provided for excusing a juror for cause based on his attitude toward capital punishment. (§ 16-3-20(E))

(6) The defendant or his counsel shall have the last argument during both the guilt and sentencing phases of the trial. (§§ 16-3-20(B) & 16-3-28)

(7) The sentencing proceeding is to be conducted by the trial judge before the trial jury, and is to follow the conviction closely in time. (§ 16-3-20(B)

(8) The State may only introduce such evidence in aggravation as has been made known to the defendant in writing prior to the trial. (§ 16-3-20(B))

(9) The jury must designate the aggravating circumstances which it found beyond a reasonable doubt, and the trial judge, prior to imposing sentence, must find as an affirmative fact that the death penalty was warranted under the evidence and that it was not a result of prejudice, passion, or any other arbitrary factor. (§ 16-3-20(C))

The State argues that since the changes introduced by the Act of 1977 are procedural and remedial in effect, the statute may operate retrospectively. *Howard v. Allen,* 368 F. Supp. 310 (D. C. S. C. 1973), *aff'd,* 4 Cir., 487 F. (2d) 1397, *cert. den.* 417 U. S. 912, 94 S. Ct. 2611, 41 L. Ed. (2d) 216. We are not persuaded by this argument. Nowhere in the Act of 1977 is there anything to suggest that the legislature intended for the Act to be applied retrospectively. To the contrary, our reading of the Act convinces us that it was the intent that no one suffer the death penalty

unless and until the whole bifurcated trial was conducted at both stages consistent with the Act of 1977. Since the Act of 1977 did not become effective until June 8, 1977, the death penalty cannot be applied to defendants who were tried before that date.

Were we to grant the State's petition to resentence these defendants under the Act of 1977, a number of the safeguards which are provided therein would be unavailable.[4] We therefore conclude that these six defendants may not, consistent with due process, be sentenced under the provisions of the Act of 1977.

We therefore uphold the life sentences of defendants Rodgers and Cason, who have already been resentenced, and direct that the circuit courts resentence MacPhee, Allen, Wakefield and Gaskins to life imprisonment, as in *State v. Rumsey, supra.*

The petitions are hereby denied.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.

---

[4] This point was conceded by the State in oral argument.