John Henry KNAPP et al., Petitioners,

v.

Harold J. CARDWELL, Respondent.

No. CIV 78–385 PHX CAM.

United States District Court,
D. Arizona.

April 18, 1980.

William J. Schafer, III, Chief Counsel, Crim. Div., Phoenix, Ariz., for respondent.

John Foreman, Phoenix, Ariz., for petitioners Paul William Jordan and John Henry Knapp.

John P. Frank, Phoenix, Ariz., for amicus curiae.

Frank C. Nielsen, Kingman, Ariz., for James Alan Arnett.

David A. Chamberlain, Prescott, Ariz., for Ronald Paul Bishop.

Thomas E. Higgins, Jr., Tucson, Ariz., for Mitchell Thomas Blazak.

Charles L. Weninger, Tucson, Ariz., for Richard B. Britson.

Joe Erlichman, Phoenix, Ariz., for Robert Paul Brookover.

Chris E. Wotruba, Phoenix, Ariz., for Paris Hoyt Carriger.

Brice Buehler, Phoenix, Ariz., for Jose Jesus Ceja.

James Kerley, Bisbee, Ariz., for James Dean Clark.

Jordan Green, John E. Savoy, Murray Miller, Phoenix, Ariz., for Max Anderson Dunlap.

J. Douglas McVay, Phoenix, Ariz., for Larry Eugene Evans.

Robert C. Brown, Casa Grande, Ariz., for Randy Greenawalt.

David S. Hoffman, Tucson, Ariz., for Douglas Edward Gretzler.

Thomas V. Rawles, Phoenix, Ariz., for Wilmer G. Holsinger, Mark Allen Koch and Ronald Lee Madsen.

Frederick S. Klein, Tucson, Ariz., for Jimmie Wayne Jeffers.

Donald E. Wolfram, Phoenix, Ariz., for Manuel Thomas Lujan.

John Rood, Phoenix, Ariz., for Loris Lee McVay.

James H. Kemper, Phoenix, Ariz., for Luis Mata, Stevenson L. McDaniel and James Albert Robison.

Robert L. Storrs, Phoenix, Ariz., for Ruben Melendez.

Edwin F. Cathcart, Tempe, Ariz., for Joe Morales.

Allen G. Minker, Tucson, Ariz., for Willie Lee Richmond.

Stephen M. R. Rempe, Phoenix, Ariz., for Joe Clarence Smith.

Terry J. Adams, Phoenix, Ariz., for Sylvester Smith, Jr.

Robert B. Norgren, Tucson, Ariz., for Willie Luther Steelman.

Boyd T. Johnson, Coolidge, Ariz., for Raymond Tison.

Phillip W. Glenn, Casa Grande, Ariz., for Ricky Tison.

Thomas G. Martin, Tucson, Ariz., for Frank James Valencia.

Michael F. Beers, Casa Grande, Ariz., for Robert Wayne Vickers.

Michael J. Meehan, Tucson, Ariz., for Spencer Watson.

## OPINION AND ORDER

MUECKE, Chief Judge.

On May 13, 1978, petitioner John Henry Knapp, an inmate on Arizona's death row, brought before this Court, pursuant to 28 U.S.C. § 2254, a Petition for Writ of Habeas Corpus, seeking to enjoin his execution by respondent. After court proceedings in this, and other related cases, Knapp's action has reached its present posture. A brief historical review will be helpful to an understanding of the issues presented to the Court.

In 1973, the Arizona legislature adopted A.R.S. §§ 13–453 [1] and 454,[2] both of which have since been repealed. Section 13–453 stated that upon conviction of mur-

1. A.R.S. § 13–453 provides:

*Punishment for murder*

A. A person guilty of murder in the first degree shall suffer death or imprisonment in the state prison for life, without possibility of parole until the completion of the service of twenty-five calendar years in the state prison, as determined by and in accordance with the procedures provided in § 13–454.

B. A person guilty of murder in the second degree shall be punished by imprisonment in the state prison for not less than ten years. As amended Laws 1973, Ch. 138, § 2.

2. A.R.S. § 13–454 provides:

*Proceedings for determining sentence upon the finding or admitting of guilt in cases of murder in the first degree*

A. When a defendant is found guilty of or pleads guilty to first degree murder, the judge who presided at the trial or before whom the guilty plea was entered shall conduct a separate sentencing hearing to determine the existence or nonexistence of the circumstances set forth in subsections E and F, for the purpose of determining the sentence to be imposed. The hearing shall be conducted before the court alone.

B. In the sentencing hearing the court shall disclose to the defendant or his counsel all material contained in any presentence report, if one has been prepared, except such material as the court determines is required to be withheld for the protection of human life. Any presentence information withheld from the defendant shall not be considered in determining the existence or nonexistence of the circumstances set forth in subsection E or F. Any information relevant to any of the mitigating circumstances set forth in subsection F may be presented by either the prosecution or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials; but the admissibility of information relevant to any of the aggravating circumstances set forth in subsection E shall be governed by the rules governing the admission of evidence at criminal trials. Evidence admitted at the trial, relating to such aggravating or mitigating circumstances, shall be considered without reintroducing it at the sentencing proceeding. The prosecution and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the circumstances set forth in subsections E and F. The burden of establishing the existence of any of the circumstances set forth in subsection E is on the prosecution. The burden of establishing the existence of the circumstances set forth in subsection F is on the defendant.

C. The court shall return a special verdict setting forth its findings as to the existence or nonexistence of each of the circumstances set forth in subsection E and as to the existence or nonexistence of each of the circumstances in subsection F.

D. In determining whether to impose a sentence of death or life imprisonment without possibility of parole until the defendant has served twenty-five calendar years, the court shall take into account the aggravating and mitigating circumstances enumerated in subsections E and F and shall impose a sentence of death if the court finds one or more of the aggravating circumstances enumerated in subsection E and that there are no mitigating circumstances sufficiently substantial to call for leniency.

E. Aggravating circumstances to be considered shall be the following:

1. The defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable.

2. The defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person.

3. In the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense.

4. The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

5. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.

6. The defendant committed the offense in an especially heinous, cruel, or depraved manner.

F. Mitigating circumstances shall be the following:

1. His capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.

2. He was under unusual and substantial duress, although not such as to constitute a defense to prosecution.

3. He was a principal, under § 13–452, Arizona Revised Statutes, in the offense, which was committed by another, but his participation was relatively minor, although not so minor as to constitute a defense to prosecution.

4. He could not reasonable have foreseen that his conduct in the course of the commission of the offense for which he was convicted would cause, or would create a grave risk of causing, death to another person. Added Laws 1973, Ch. 138, § 5.

der in the first degree, a defendant could be sentenced to either death or to life imprisonment without parole for twenty-five years. Section 13–454 set forth the procedure by which the death penalty could be imposed. It provided that once the state proved the existence of one or more of the "aggravating circumstances" contained in subsection E of the statute, the burden of proof switched to the defendant to establish "mitigating circumstances." If the defendant were unable to do so, death was mandatory. Subsection F of Section 13–454 listed four mitigating circumstances that could be considered by the court.

On December 20, 1976, in *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1977), the Arizona Supreme Court held that the mitigating circumstances enumerated in A.R.S. § 13–454(F) were intended to be exclusive and that sentencing courts were powerless to consider other factors such as defendant's age, his prior record, or the extent of his cooperation with the authorities. The court's restrictive interpretation of subsection F was reaffirmed in *State v. Bishop*, 118 Ariz. 263, 576 P.2d 122 (1978).

On April 21, 1978, two death-row inmates petitioned this Court for writs of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging the unconstitutionality of A.R.S. § 13–454 as interpreted in *State v. Richmond, supra*, and *State v. Bishop, supra. Richmond v. Cardwell*, 450 F.Supp. 519 (D.Ariz. 1978). The Court concluded that the failure of Section 13–454 to permit consideration of all relevant mitigating circumstances violated petitioners' rights under the eighth and fourteenth amendments of the United States Constitution and enjoined the state from putting petitioners to death. *Id.* at 526.

On May 2, 1978, the Arizona Supreme Court directed the execution of John Henry Knapp. Knapp immediately instituted the present action, alleging that the Court's reasoning *Richmond v. Cardwell, supra*, was applicable to all inmates on Arizona's death row. On May 12, 1978, this Court entered an order permitting Knapp's suit to proceed as a class action under Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure and enjoined respondent from imposing the death penalty on any State prisoners.

On July 3, 1978, the United States Supreme Court decided *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), in which it struck down Ohio's death penalty statute for the same reasons given by this Court in *Richmond v. Cardwell, supra*.[3]

On July 20, 1978, the Arizona Supreme Court handed down *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), in which the court addressed the effect of *Lockett* on its position that Section 13–454 limited the mitigating circumstances that could be considered by a sentencing court with respect to defendants convicted of first-degree murder. Although the Arizona court found this restriction unconstitutional, it held that had the state legislature been aware of the problem, it would have permitted consideration of all relevant mitigating circumstances. Thus, the court ruled that the constitutional portion of A.R.S. § 13–454 was "severable" from that which was unconstitutional, and remanded defendant's case for resentencing under the newly-construed statute.

On May 1, 1979, the Arizona legislature adopted the present version of A.R.S. § 13–703[4] which, in essence, codified the

3. On that same day, the United States Supreme Court vacated the judgment of the Arizona Supreme Court in *State v. Jordan*, 114 Ariz. 452, 561 P.2d 1224 (1976) "insofar as it leaves undisturbed the death penalty imposed," *Jordan v. Arizona*, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978). It is noteworthy that the defendant in *Jordan* presented no evidence in

mitigation at his sentencing hearing and that the issue of the constitutionality of Arizona's restriction on mitigating circumstances was not discussed.

4. The most significant difference between the pre-1979 version of A.R.S. § 13–703 and its predecessor, Section 13–454, was that the more

changes made in *State v. Watson, supra.* As a result of the *Watson* decision, and the enactment of Section 13–703, Arizona's death row now consists of the following groups of inmates: those sentenced or re-sentenced pursuant to *Watson*; those sentenced pursuant to Section 13–703; and those sentenced prior to *Watson* whose re-sentencing is now pending. This opinion is concerned only with the effect of the *Watson* decision on the constitutionality of the death penalty in Arizona. The validity of Section 13–703, or the sentences of those sentenced pursuant to it, is not at issue in this case.

### THE PRESENT MOTION

On January 9, 1980, respondent moved to dissolve this Court's injunction of May 10, 1978, on the basis that the above inmates had been (or will be) sentenced under a procedure that permits consideration of all mitigating circumstances.[5] Petitioners, through counsel, filed numerous responses, some of which raised a variety of legal issues.[6] Oral argument was held on February 25, 1980, after which the Court took the matter under advisement. Since oral argument, two petitioners have filed supplemental memoranda, and respondent has replied thereto.

At the heart of respondent's motion is the validity of the Arizona Supreme Court's decision in *State v. Watson, supra.* There is no question that *Watson* professes to remedy that which was the basis of this Court's original injunction. The issue is whether the means chosen by the Arizona Supreme Court are subject to constitutional objections.

### DID WATSON DELETE LANGUAGE FROM SECTION 13–454?

Several petitioners argue that the *Watson* Court deleted subsection F from Section 13–454, thereby severing the statute's list of the mitigating circumstances a court must consider in its decision whether to impose death. From this proposition, it is urged that all statutory reference to subsection F is meaningless and that Section 13–454 is rendered void for vagueness. Alternatively, it is argued that without subsection F, sentencing courts are no longer permitted to consider *any* mitigating circumstances—a clear violation of the eighth amendment. This Court's analysis of *Watson* makes it unnecessary to address the merits of either of these contentions.

While *Watson* was not overly explicit as to the means by which it constitutionalized Section 13–454, a close reading of the case makes it apparent that the Arizona court altered the statute through reinterpretation rather than by deleting specific statutory language. This conclusion is supported by two findings. First, the restriction on mitigating circumstances that was "severed" in *Watson* cannot be found in the express language of Section 13–454. Rather, it was the product of the court's prior interpretations in *State v. Richmond, supra,* and *State v. Bishop, supra.* Second, at no point in the *Watson* decision did the court invalidate or strike specific language of Section 13–454. It removed only that portion of the statute which restricted mitigating circumstances.

Section 13–454 contains no language which demands the restrictive view of *State*

recent statute added for consideration a fifth mitigating factor: the defendant's age.

5. Respondent, by his Motion to Dissolve Injunction; Motion to Vacate Order Allowing Class Action; Motion to Determine Membership of Class, filed January 9, 1980, first asked for an order vacating this Court's Order of May 12, 1978, which permitted petitioner Knapp's suit to proceed as a class action under Rule 23(b)(1) and (b)(2), Fed.R.Civ.P., for the reason that many petitioners in this action have separate actions in which the questions here presented could be handled. The Court is of the opinion that the ends of justice and judicial economy are better served by permitting this

case to proceed as a class action, and therefore denies this aspect of respondent's request. This Opinion will deal with respondent's alternative motions.

6. Rather than discuss all of petitioners' arguments, the Court will address only those points that the Court finds dispositive. Petitioners' remaining arguments are either individual claims better raised in individual actions or are without substantial merit. Since the arguments not discussed here are not foreclosed by this Opinion and Order, there is no prejudice to petitioners in treating them summarily.

*v. Richmond* and *State v. Bishop* that "subsection D authorizes the trial court to take into account only those mitigating circumstances enumerated in subsection F." *State v. Richmond*, 114 Ariz. at 204, 560 P.2d at 50. Subsection F gives no express indication of whether its list was intended to be illustrative or exclusive. It merely states "mitigating circumstances shall be the following ...."[7] While subsection D requires the sentencing court to "take into account the ... mitigating circumstances enumerated in subsection F," it stops short of limiting the court to those circumstances. Instead, subsection D states that the sentencing judge "shall impose a sentence of death if the court finds one or more of the aggravating circumstances enumerated in subsection E and that there are *no mitigating circumstances sufficiently substantial to call for leniency.*" (Emphasis added.)

Since the restriction on mitigating circumstances with which *Watson* was concerned cannot be found in the express language of subsections D or F, it must have been the product of judicial interpretation.

This being the case, it is more likely that the court would remove the restriction by reinterpretation rather than by severing an identifiable portion of the statute.[8]

The view that the *Watson* decision was intended to overrule the Arizona Supreme Court's own restrictive interpretations of Section 13–454 in *State v. Richmond* and *State v. Bishop*, rather than to delete specific statutory language is supported by a careful examination of the *Watson* opinion itself. Nowhere did the court state that subsection F in its entirety was unconstitutional. It merely invalidated that provision *"insofar as it limits* the right of the defendant to show additional circumstances ...." *State v. Watson*, 120 Ariz. at 445, 586 P.2d at 1257 (emphasis added).[9] Similarly, the court never expressed the desire to excise particular words or subsections from Section 13–454. Rather, the court spoke of the "unconstitutional portion" and the "offending portion," *id.* at 445, 586 P.2d at 1257, and held that "the statute remained in full force and effect and that *only* the *portion limiting the factors* in mitigation should be

7. This language is identical to that contained in Fla.Stat.Ann. § 921.141 (Supp.1979), which the United States Supreme Court interpreted to permit consideration of all relevant mitigating circumstances in *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1975). *See* note 14, *infra.*

8. That the Arizona Supreme Court was engaging in statutory interpretation when it held that "subsection D authorizes the trial court to take into account only those mitigating circumstances enumerated in subsection F," *State v. Richmond*, 114 Ariz. at 204, 560 P.2d at 50, was recognized by this Court in its 1978 decision in *Richmond v. Cardwell*, 450 F.Supp. 519 (D.Ariz.1978). After discussing the mitigating factors contained in subsection F, this Court stated:

> Factors absent in this statute are (to name a few), considerations of the defendant's age at the time the crime was committed, his prior record; and the amount and nature of his cooperation with authorities, whether his capacity at the time of the crime was affected by mental defect or intoxication. *Theoretically, if any of the above were relevant they might by implication be considered under one of the four mitigating factors listed in the Arizona statute. However, the Arizona Supreme Court has held otherwise.* In *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1977),

the court held that the four mitigating factors in A.R.S. § 13–454 are exclusive. The court eliminates the possibility of implying relevant mitigating factors from the ones listed, by stating 'we hold that subsection D authorizes the trial court to take into account only those mitigating circumstances enumerated in subsection F.'

*Id.* at 522 (emphasis added). This Court went on to observe that:

> The inescapable conclusion is that the Arizona Supreme Court in construing the statute in question and in an attempt to prevent it from becoming vague and ambiguous, has defeated the respondent's position that the factors which have been omitted from the death penalty statute can be considered, where relevant, as being implied by the four enumerated mitigating circumstances.

*Id.* at 523.

9. On rehearing, the court referred to its prior holding using similar language: "This Court, in *State v. Watson*, ... held that *the restriction* in the showing of mitigating circumstances in the sentencing provisions of our death penalty statute, Section (D) of 13–454, was unconstitutional." 120 Ariz. at 451–52, 586 P.2d at 1263–64. Again, the court invalidates that which must be read into the statute rather than a portion of the statute itself.

set aside." *Id.* at 452, 586 P.2d at 1264 (emphasis added). At no point did the court set aside the "factors" themselves.

This Court's reading of *Watson* convinces it that when the Arizona Supreme Court posed the question "whether the constitutional and unconstitutional portions of A.R.S. §§ 13–453 and 454 are severable so that the constitutional portion of the statute can remain in force and effect," *State v. Watson*, 120 Ariz. at 445, 586 P.2d at 1257, the court was not speaking in terms of lopping off actual statutory language. It was merely asking whether the statute could stand without its restrictive interpretation.[10] So viewed, the post-*Watson* version of Section 13–454 is neither void for vagueness nor violative of the eighth or fourteenth amendments.

## JUDICIAL LEGISLATION

Petitioners argue that the Arizona Supreme Court's alterations of Section 13–454 are unconstitutional in that they are supported by neither the legislative history nor the language of the statute.[11] In the face of such contentions, the role of a federal court is limited.

■ The Supreme Court has established that state courts can use statutory interpretation to validate otherwise questionable death penalty statutes. *Lockett v. Ohio, supra; Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1975).[12] Moreover, it is axiomatic that courts should construe legislation in a constitutional manner "if fairly possible." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). *See also Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). So far as federal courts are concerned, the general rule is that the statutory interpretation of the highest court in the state is "as though written into the [statute] itself," *Poulos v. New Hampshire*, 345 U.S. 395, 402, 73 S.Ct. 760, 765, 97 L.Ed. 1105 (1953), and that state courts "have the final authority to interpret and, where they see fit *to reinterpret* that State's legislation." *Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961) (emphasis added). *See also, Wainright v. Stone*, 414 U.S. 21, 22–23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973); *N.A.A.C.P. v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963); *Winters v. New York*, 333 U.S. 507, 514, 68 S.Ct. 665, 669, 92 L.Ed. 84 (1947). In passing on the question whether a Kansas antitrust statute was an unconstitutional infringement on the freedom to contract, the Supreme Court stated:

> It is well settled that in cases of this kind the interpretation placed by the highest court of the State upon its statutes is conclusive here.... Nor is it material that the state court ascertains the meaning and scope of the statute as well as its validity by pursuing a different rule of construction from what we recognize.... The power to determine the meaning of a statute carries with it the power to pre-

**10.** The finding that neither the language nor the legislative history of Section 13–454 demand a restrictive interpretation, *see* text accompanying notes 13–15, *infra*, and that the *Watson* Court was merely overruling its prior interpretations in *State v. Richmond* and *State v. Bishop*, answer petitioner's arguments that the circumstances of this case preclude the Court's use of the "doctrine of severability" as a means of constitutionalizing the statute. *Watson* severed nothing, save for its own prior interpretations.

**11.** More specifically, petitioners argue that *Watson's* resentencing order violated the eighth amendment as a judicial imposition of a penalty or that it amounted to judicial legislation in violation of the constitutional guarantee of a republican form of government.

**12.** In *Lockett*, the Court distinguished the statute with which it was dealing from those it upheld in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), on the basis that the Ohio statute scrutinized in *Lockett* expressly limited the number of mitigating circumstances the sentencing court could consider. 438 U.S. at 608. Although the *Jurek* and *Proffitt* statutes were unclear as to whether the court was so limited, they had been interpreted to permit consideration of all relevant circumstances. *Lockett, supra*, 438 U.S. at 606–607, 98 S.Ct. at 2965–2966. It was this interpretation that saved them.

scribe its extent and limitations as well as the method by which they shall be determined.

*Smiley v. Kansas,* 196 U.S. 447, 455, 25 S.Ct. 289, 290, 49 L.Ed. 546 (1904).

Petitioners argue that the Arizona Supreme Court's reinterpretation of Section 13–454 is nevertheless subject to federal review for the reason that its construction is manifestly unreasonable. Assuming for purposes of argument that such a finding would place petitioners within an exception to the general rule,[13] this Court's reading of Section 13–454 defeats petitioners' argument. While Arizona's death penalty statute is not explicit on the issue of mitigation, this Court does not find the *Watson* Court's construction to be unreasonable.

As previously stated, there is nothing in the express language of Section 13–454 that restricts a sentencing court's ability to consider mitigating circumstances. In fact, Arizona's death penalty law is remarkably similar to the Florida statute upheld by the United States Supreme Court in *Proffitt v. Florida, supra,* and reexamined in *Lockett v. Ohio, supra.*[14] The legislative history of Section 13–454 is likewise ambiguous. While petitioners cite developments which they claim are compatible with the view that the Arizona legislature intended a restrictive reading of the statute, there is nothing that demands such a conclusion.[15]

---

**13.** The principal case relied upon by petitioners is *Baird v. Bellotti,* 450 F.Supp. 997 (D.Mass. 1978), in which a federal district court held Massachusetts' abortion statute unconstitutional. That case is distinguishable on a number of grounds, one of which is the court's finding that "the Massachusetts court, in addition to contradicting its specific terms, suggests reading into the statute affirmative provisions made out of nothing but a generally announced purpose to pass constitutional muster." *Id.* at 1005. *Watson* is not such a case. Other cases cited by petitioners include *Mullaney v. Wilbur,* 421 U.S. 684, 691 n. 4, 95 S.Ct. 1881, 1883 n. 4, 44 L.Ed.2d 508 (1971) ("On rare occasions the Court has re-examined a state-court interpretation of state law when it appears to be an 'obvious subterfuge to evade consideration of a federal issue.' *Radio Station WOW, Inc. v. Johnson,* 326 U.S. 120, 129 [65 S.Ct. 1475, 1480, 89 L.Ed. 2092] (1945).") and *Demorest v. City Bank Co.,* 321 U.S. 36, 42, 64 S.Ct. 384, 388, 88 L.Ed. 526 (1943) ("Even though the constitutional protection invoked be denied on non-federal grounds, it is the province of this court to inquire whether the decision of the state court rests upon a fair or substantial basis."). This Court's findings regarding the reasonableness of the *Watson*'s Court's reinterpretation of its own law make it unnecessary for it to pass on the applicability of these cases to the case at bar.

Finally, petitioners cite federal cases that discuss the role of a federal court in interpreting federal statutes, *see e. g., United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), and cite state cases that discuss the means by which a state court should construe state legislation, *see e. g., State ex rel. Berger v. Superior Court,* 106 Ariz. 365, 476 P.2d 666 (1970). The question before this Court, however, involves federal review of a state supreme court's construction of a state statute. The above cases are not directly helpful here.

**14.** *See* Fla.Stat.Ann. § 921.141 (Supp.1979). Both statutes introduce their lists of mitigating circumstances with the language "mitigating circumstances shall be the following." Neither states whether its list is intended to be exclusive or illustrative. In *Lockett v. Ohio, supra,* the Supreme Court noted that it "assumed, in approving the [Florida] statute, that the range of mitigating factors listed in the statute was not exclusive." *Lockett, supra,* 438 U.S. at 606, 98 S.Ct. at 2965 (emphasis added). The Court went on to state that:

> The opinion of Justices STEWART, POWELL, and STEVENS in *Proffitt, supra,* noted that the Florida statute "provides that '[a]ggravating circumstances shall be *limited* to . . . [eight specified factors]' " and that there was 'no such limiting language introducing the list of statutory mitigating factors.' (Citations omitted).

*Lockett, supra,* 438 U.S. at 606 n. 15, 98 S.Ct. at 2966 n. 15 (emphasis in original).

While there is language in the Florida statute that might make it more conducive to nonrestrictive interpretation than Section 13–454, these differences are not particularly significant. The Supreme Court in *Proffitt, supra,* was dealing with the question how the state's statute should be interpreted. Here, the state court has spoken. The only remaining issue is whether the interpretation which it eventually embraced is so unreasonable as to be unconstitutional. *See* note 13, *supra.*

**15.** Neither *State v. Richmond, supra,* nor *State v. Bishop, supra,* cited legislative history in support of their holdings. Petitioners point to two events that occurred prior to the enactment of Section 13–454 which they feel demand the conclusion that the Arizona Legislature intended that the mitigating circumstances enumerated in subsection F be exclusive. The first incident emphasized by petitioners was

Petitioners' only remaining argument is that the Arizona Supreme Court's refusal to retract its earlier position that the legislature intended a restrictive interpretation of Section 13–454 at the time of enactment precludes a finding that *Watson*'s holding was the product of legitimate statutory construction. This argument is likewise without merit.

While it is true that the *Watson* Court maintained the view that "Section F of A.R.S. § 13–454 is exclusive in that pursuant to Section D of A.R.S. § 13–454, the Court may consider as mitigating circumstances only those contained therein," *State v. Watson*, 120 Ariz. at 444, 586 P.2d at 1256, the court went on to hold that, at the time of enactment, the legislature would have preferred a broad reading of subsections D and F to an invalidation of the entire statute. Noting that its restrictive reading of Section 13–454 was " 'severable from the rest in such a way that the legislature would be presumed to have enacted them independently . . .', *State ex rel. Berger v. Superior Court*, 106 Ariz. 365, 370, 476 P.2d 666, 671 (1970)", *State v. Watson*, 120 Ariz. at 452, 586 P.2d at 1264, the *Watson* Court went on to state that:

> We believe there is sufficient evidence in the legislative history of the enactment of this statute as well as the statute itself from which it is apparent that had the legislature anticipated that the legislation on mitigating factors would be found unconstitutional they would still have enacted the rest of the statute. Indeed, there is more than ample indication that the legislature intended a death penalty statute and were prepared to write one that complied with the United States constitutional guidelines.

*Id.* at 453, 586 P.2d at 1265.

Given the facts that neither the language nor the legislative history of Section 13–454 compel the conclusion that the Arizona legislature was opposed to open mitigation, and the state supreme court's findings that, at the time of enactment, the legislature would have preferred reinterpretation to statutory invalidation, there is sufficient basis on which to uphold the *Watson* interpretation of A.R.S. § 13–454.[16] This Court is aware of no further constitutional re-

the legislature's failure to enact a bill submitted by Attorney General Gary K. Nelson which provided for the consideration of more mitigating circumstances than those set forth in Section 13–454. Petitioners also point to the fact that Section 13–454, as finally enacted by the legislature, omitted a provision which had been included in the version passed by the State House of Representatives. That provision provided:

> Evidence may be presented as to any matter the sentencing panel deems relevant to sentencing, and shall include matters relating to any of the aggravating or mitigating circumstances in sections b and c of this session.

Journal of the House, 31st Legislature, First Regular Session, at 499. While the above incidents might be compatible with the view that the legislature intended to restrict mitigation, they are not nearly so persuasive as to compel that conclusion.

Petitioners also find significance in the legislature's post-*Watson* enactment of A.R.S. § 13–703, which left Section 13–454 largely unchanged. That statute, however, was part of a revision of the entire criminal code, which went into effect on October 1, 1978. We find no indication that, in passing on Section 13–703, the legislature was voicing its rejection of *Watson*'s conclusions as to legislative intent. In fact, the legislation could have been a reaction

to the interpretation of the death penalty statute by the Arizona Supreme Court in *State v. Richmond, supra*, and *State v. Bishop, supra*. This Court finds more significance in the legislature's May 1, 1979, revision of Section 13–703, which codified the alterations made by the *Watson* court.

**16.** A.R.S. §§ 1–211 *et seq.*, sets forth the rules of statutory construction by which the Arizona courts are bound. Section 1–211 requires that the courts observe the rules set forth in Title 1, Chapter 2 ". . . unless such construction would be inconsistent with the manifest intent of the legislature." A.R.S. § 1–211(A). Section 1–211 also provides:

> B. Statutes shall be liberally construed to effect their objects and to promote justice.
> C. The rules of common law that penal statutes shall be strictly construed has no application to these revised statutes. Penal statutes shall be construed according to the fair import of their terms, with a view to effect their object and to promote justice.

In *Watson*, the Arizona Supreme Court indicated that the manifest intent of the legislature in enacting A.R.S. § 13–454 was that there be a death penalty, not that the mitigating factors be limited in number. *See Watson, supra*, 120 Ariz. at 445, 453, 586 P.2d at 1257, 1265.

quirement that the state supreme court hold that its reinterpretation was originally intended by the legislature.

## DOUBLE JEOPARDY

Those petitioners who have been resentenced pursuant to *Watson*, or whose resentencing is pending, argue that the double jeopardy clause of the fifth amendment to the United States Constitution protects them from the imposition of a second death penalty. This contention must be rejected.

██ The double jeopardy clause does not prohibit resentencing per se. It prevents only an increase in sentence, or the imposition of multiple sentences for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Ex parte Lange*, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873). Furthermore no change is proscribed unless a defendant's original punishment has commenced.[17] *Suggs v. Wilson*, 403 F.2d 52 (9th Cir. 1968).

██ For obvious reasons, none of the petitioners claims to have actually begun serving his death sentence. Moreover, it cannot be argued that petitioners resentenced pursuant to *Watson* have been subjected to multiple or increased penalties unless, between sentencing and resentencing, their death penalties were somehow reduced to life imprisonment. The *Watson* Court concluded that the defendant's death sentence was "merely set aside" upon the court's resentencing order, and that there had been no reduction to life imprisonment:

There is no doubt that the double jeopardy clause applies to sentencing as well as conviction, *Ex Parte Lange*, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873), and defendant cites several cases, two from California, *People v. Harvey*, 76 Cal. App.3d 441, 142 Cal.Rptr. 887 (1978), and *People v. Payne*, 75 Cal.App.3d 601, 142 Cal.Rptr. 320 (1977), as well as the South Carolina case of *State v. Rodgers* [270 S.C. 285], 242 S.E.2d 215 (S.C.1978) in support of his position. All three of these cases are distinguishable. In each of those cases, the defendants, after having been sentenced to death, had their sentences reduced to life imprisonment. After they had commenced to serve the life sentences, the state sought to have them resentenced under legislation enacted after the crime and the reversal. Thus, after the life sentences were at least partially served, the state attempted to subject them to another different and higher punishment.... We agree with the California court, but these cases are clearly distinguishable and do not apply to the case at bar. The defendant in the instant case never served his sentence (of death). His death sentence was not reduced to life imprisonment but was merely set aside pending resentencing. We find no violation of the double jeopardy clause in the instant case. See also *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

*State v. Watson*, 120 Ariz. at 453, 586 P.2d at 1265.

---

**17.** Even when a defendant's sentence has commenced, double jeopardy does not prohibit a court from resentencing him to a different penalty where the original sentence was wholly illegal or completely void, *see Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); *United States v. Turner*, 518 F.2d 14 (7th Cir. 1975), or where a defendant has obtained a reversal of his original conviction. *See North Carolina v. Pearce*, 395 U.S. at 720, 89 S.Ct. at 2078 ("And at least since 1919, when *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103, was decided, it has been settled that a corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction.") Moreover, in its 1899 decision in *Murphy v. Massachusetts*, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711 (1899), cited in *North Carolina v. Pearce*, 395 U.S. at 720 n. 16, 89 S.Ct. at 2078 n. 16, the Supreme Court held that the double jeopardy clause does not bar a court from resentencing a defendant once he has successfully attacked his first sentence. In such circumstances, "it is well settled that a convicted person cannot by his own act avoid the jeopardy in which he stands, and then assert it as a bar to subsequent jeopardy." 177 U.S. at 158, 20 S.Ct. at 640.

Petitioners argue that *People v. Harvey,* 76 Cal.App.3d 441, 142 Cal.Rptr. 887 (1978), and *People v. Payne,* 75 Cal.App.3d 601, 142 Cal.Rptr. 320 (1977), the two California Court of Appeals decisions distinguished in *Watson,* reflect a common law doctrine that "automatically" imposes life sentences upon state death row inmates following the invalidation of a state's death penalty statute.[18] These cases do not support such an assertion.

In *Rockwell v. Superior Court of Ventura County,* 18 Cal.3d 420, 134 Cal.Rptr. 650, 556 P.2d 1101 (1976), which preceded *Payne* and *Harvey,* the California Supreme Court invalidated California's death penalty statute. Unlike the *Watson* Court, however, the *Rockwell* Court found that the revisions suggested by the government would exceed the scope of legitimate statutory interpretation and would be "contrary to manifest legislative intent." *Id.* at 665, 556 P.2d at 1116. Since the court was unable to repair the statute, it severed the portion authorizing the death penalty from the remaining penalty provisions and ordered that "petitioner may therefore be sentenced to a term of life imprisonment." *Id.* Given this language, the California Court of Appeals in *People v. Harvey, supra,* held that the "practical effect" of the *Rockwell* decision "automatically reduced appellant's sentence to life imprisonment." *People v. Harvey,* 76 Cal.App.3d at 447, 142 Cal.Rptr. at 891. *See also People v. Payne, supra* (in which the court of appeals had actually reduced the defendant's death sentence to life imprisonment pursuant to *Rockwell* prior to the state's motion for resentencing).

Contrary to petitioner's assertions, the above rulings by the California Court of Appeals did not and could not establish a common law doctrine applicable in all cases and all states where a death penalty statute has been invalidated. The *Rockwell* decision, which was interpreted in *Harvey* and *Payne,* is similar to *State v. Watson* only in that in each case the supreme court of a state was exercising its prerogative of passing on the constitutionality of the respective state's death sentencing procedures. While the *Watson* Court found that the Arizona statute could be saved through statutory interpretation, the California court reached a contrary conclusion. In addition, the *Watson* Court held that the effect of its ruling was to simply "set aside" the defendant's death sentence pending resentencing, while the *Rockwell* Court held that the defendant's sentence must be reduced to life imprisonment.

This Court is aware of no constitutional principle which prohibits the course taken by the *Watson* Court, and finds that the question whether a state court's invalidation of its death penalty statute actually triggers a lesser sentence or merely "sets aside" a defendant's death penalty "pending resentencing" is one of state, and not constitutional law.

Petitioners' second double jeopardy argument is that Arizona statutory law operated to impose life sentences on petitioners the moment *Watson* invalidated its prior restrictive interpretations of Section 13–454. They point to Chapter 138, Laws of 1973, Section 10, which provides that

> In the event the *death penalty* is held to be unconstitutional on *final appeal,* a person convicted of first degree murder or another offense punishable by death who

18. Petitioners also cite this Court's Opinion in *Richmond v. Cardwell, supra,* as well as the United States Supreme Court's decisions in *Lockett v. Ohio, supra,* and *Jordan v. Arizona,* 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978), as having the effect of invalidating Section 13–454 and thus reducing their sentences to life imprisonment. *Richmond v. Cardwell, supra,* merely enjoined the execution of those petitioners who were parties to that action. While this Court found Section 13–454, as interpreted in *State v. Richmond* and *State v. Bishop,* to be unconstitutional, its ruling in no way invalidated Arizona's sentencing statute or reduced the penalties of those who were sentenced under it. The Supreme Court's decisions in *Lockett v. Ohio, supra,* and *Jordan v. Arizona, supra,* are also inapplicable. *Lockett* was concerned only with the law of Ohio, and had no direct impact on the validity of Arizona's statute. In *Jordan, supra,* the Supreme Court stopped short of invalidating Section 13–454. It merely vacated a death sentence that had been upheld by the Arizona Supreme Court and remanded for further proceedings in light of its decision in *Lockett. See note 3, supra.*

had been sentenced to die shall be resentenced by the sentencing court to life imprisonment .... (Emphasis added).

On the question whether Section 10 is applicable to the facts at hand, the *Watson* Court stated:

Defendant contends that since we have found the death penalty unconstitutional, we therefore must sentence the defendant to twenty-five years. We do not agree.

We did not find the death penalty to be unconstitutional. We held only that in determining the death penalty there are certain factors which, if presented by the defendant, the court must consider. The statute, as severed is valid.

*State v. Watson*, 120 Ariz. at 453, 586 P.2d at 1265. The Arizona Supreme Court's holding that the life-sentence provision of Section 10 is activated only upon invalidation of the death penalty itself, as opposed to the statutory sentencing procedure, is not unreasonable.[19] This Court, therefore accepts the State court's interpretation of its own law, *Poulos v. New Hampshire*, 345 U.S. 395, 402, 73 S.Ct. 760, 764, 97 L.Ed. 1105 (1953), and holds that petitioners' resentencing pursuant to *Watson* does not violate the double jeopardy clause.

## EX POST FACTO

The ex post facto clause of the United States Constitution prohibits:

any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to the law *at the time when the act was committed*. . . .

*Beazell v. Ohio*, 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925), (emphasis added); United States Constitution, Art. I, § 10, cl. 1. Decisions by the Supreme Court demonstrate that the ex post facto clause embodies the concept that persons have a right to fair warning of the conduct which will give rise to criminal penalties:

The constitutional prohibition and the judicial interpretation of [the ex post facto clause] rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

269 U.S. at 170, 46 S.Ct. at 69. Although the ex post facto prohibition applies of its own force only to legislative acts, the Court has struck down unforeseeable judicial enlargements of criminal statutes as violative of due process when applied retroactively. *See Marks v. United States*, 430 U.S. 188, 190, 97 S.Ct. 990, 991, 51 L.Ed.2d 260 (1977); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

 Petitioners contend that the retroactive application of *Watson*'s interpretation of Section 13–454 amounts to the imposition of an ex post facto penalty in two respects. Emphasizing *Watson*'s finding that a portion of Section 13–454 was unconstitutional, petitioners argue that the ex post facto clause protects them from the application of a newly enacted penalty.

Petitioners' second argument alleges that the differences between Section 13–454 and post-*Watson* sentencing are such that the retroactive application of the latter is likewise unconstitutional. The United States Supreme Court's recent decision in *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), answers both of petitioners' contentions.

In *Dobbert*, a Florida defendant was convicted of several murders which had occurred prior to April 8, 1972. The death penalty in effect at the time the murders were committed mandated that a person convicted of a capital felony was to be punished by death unless a majority of the

**19.** *See* Discussion re Judicial Legislation, *supra*.

jury recommended otherwise. On July 17, 1972, the Florida Supreme Court struck down this procedure as violative of the eighth and fourteenth amendments. *Donaldson v. Sack*, 265 So.2d 499 (Fla.1972). Before Dobbert's trial, however, the Florida legislature enacted a new death penalty procedure which gave the court sole responsibility for sentencing. The defendant was tried and sentenced pursuant to this latter statute.

Like petitioners, Dobbert attempted to avoid his death penalty by emphasizing the fact that the sentencing statute in effect at the time of the murders was later held unconstitutional. The Supreme Court rejected the significance of this point, stating that the mere fact that a penalty statute is invalidated after a crime has been committed does not render the imposition of the same penalty a violation of the ex post facto clause if, *at the time of the offense*, "the existence of the statute served as an 'operative fact' to warn the [defendant] of the penalty which [the state] would seek to impose on him if he were convicted...." 432 U.S. at 298, 97 S.Ct. at 2300.

While it cannot be seriously argued that Section 13–454 failed to serve as an "operative fact" in terms of the above quotation,[20] several petitioners would distinguish *Dobbert* on the basis that the defendant in that case was tried and sentenced under a constitutional death penalty statute. Those who were tried between the dates of this Court's decision in *Richmond v. Cardwell* and the State's decision in *Watson* and then sentenced pursuant to *Watson* point out that they were tried at a time when the

state was enjoined from imposing the death penalty. Similarly, those petitioners who were tried and sentenced under the pre-*Watson* version of Section 13–454 and then resentenced under *Watson* emphasize that they were tried and sentenced pursuant to an unconstitutional death penalty statute before being resentenced under constitutional conditions.

■ While petitioners cite several state court decisions which have distinguished *Dobbert* on the basis that their defendants had been tried and sentenced under unconstitutional death penalty statutes, including *Meller v. State*, 94 Nev. ——, 581 P.2d 3 (1978); *State v. Rogers*, 270 S.C. 285, 242 S.E.2d 215 (1978), these cases do not state rationale which this Court finds persuasive in dealing with the facts before it. *Dobbert*, and other Supreme Court decisions discussing the ex post facto clause, *see e. g., Beazell v. Ohio, supra*, suggest that the two key areas for inquiry in the present case are the law at the time of the criminal act and the law at the time of final sentencing. The ex post facto clause only prohibits detrimental substantive alterations of the applicable law "at the time the act was committed." 269 U.S. at 169, 46 S.Ct. at 68. This Court holds that, for ex post facto purposes, the status of the death penalty between the dates of petitioners' crimes and their final sentencing was irrelevant. What is important is that petitioners were forewarned of the existence of the death penalty at the time they committed their crimes and that the procedure by which they were ultimately sentenced was constitutional.[21]

---

**20.** Since none of petitioners was convicted of a murder occurring between the dates of this Court's decision in *Richmond v. Cardwell, supra*, and the Arizona Court's decision in *State v. Watson, supra*, the question whether *Richmond*'s pronouncement that Section 13–454, as interpreted, was unconstitutional, prevented that statute from serving as an "operative fact" in terms of *Dobbert* is not presented. Petitioners who committed murders after *Watson* but before the enactment of the present version of A.R.S. § 13–703 argue that *Watson* cannot serve as an "operative fact" within the meaning of *Dobbert*. This argument, however, pre-

supposes the inability of *Watson* to remedy Section 13–454—a position the Court does not accept.

**21.** *See also Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (retroactive application of a statute making a defendant's right to a separate trial depend on his ability to show good cause therefore did not violate the ex post facto clause); *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (statute which changed the rules of evidence after an indictment so as to render admissible against the accused evidence previously held inadmissible held constitutional); *Hopt v. Utah*, 110 U.S.

Petitioners' second argument emphasizes the difference between the death sentencing procedures of Section 13–454, as interpreted in *State v. Richmond, supra* and *State v. Bishop, supra,* and those under which they have been, or will be, sentenced. The *Dobbert* decision made it clear, however, that not all deviations from the law in effect on the date of an offense violate the ex post facto clause. *See also Beazell v. Ohio, supra; Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). The retroactive application of a sentencing statute is permissible so long as the changes are either "procedural" or "ameliorative." *Dobbert v. Florida,* 432 U.S. at 293–94, 97 S.Ct. at 2298–99.

Statutory changes are procedural if they have "neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict." *Id.* at 293, 97 S.Ct. at 2298. *See also Beazell v. Ohio, supra.* If a change meets this definition, the "mere fact that it may work to the disadvantage of a defendant" is irrelevant. *Id.*[22]

Similarly, an "ameliorative" change, even if substantive, is one which fails to make a statute "more onerous than the prior law." *Id.* at 294, 97 S.Ct. at 2299. In making the determination whether a change is detrimental or ameliorative, the Court stated that "we must compare the two statutory procedures *in toto* to determine if the new may be fairly characterized as more onerous." *Id.*

The only difference between the pre-*Watson* version of Section 13–454, and the statute in its reinterpreted form, is that the *Watson* decision greatly expands the sentencing court's ability to consider mitigating circumstances. The Arizona Supreme Court's changes are thus "ameliorative" at worst, and cannot be relied on to show an ex post facto violation.

Petitioners who were, or will be, resentenced pursuant to *Watson* argue that despite the ameliorative nature of the Arizona Supreme Court's reinterpretation of Section 13–454, the resentencing court's ability to consider aggravating circumstances that may have surfaced since their original death sentences were imposed[23] renders the resentencing procedure unconstitutional.[24] This argument must also be rejected.

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court stated that

the freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams v. New York, supra,* that a State may adopt the 'prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.'

*Id.* at 723, 89 S.Ct. at 2079 (quoting *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). The Supreme Court's words are equally applicable in this case. The ability of a resentenc-

---

574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (law permitting adverse testimony of an ex felon upheld even though such persons were not competent on the date of the defendant's crime).

**22.** By supplemental citation, petitioners point to the recent decision by the Supreme Court of Kentucky in *Hudson v. Kentucky,* 597 S.W.2d 610 (1980), in which the court refused to permit the retroactive application of the state's newly-enacted death penalty statute to a defendant whose crime had been committed prior to its enactment. The Hudson decision, however, was purely a matter of statutory interpretation, and is inapplicable to the present case.

**23.** In *State v. Valencia,* 124 Ariz. 139, 602 P.2d 807 (1979), a post-*Watson* ruling, the Arizona Supreme Court upheld a resentencing court's decision to consider, as an aggravating circumstance, a rape conviction which had not been entered prior to the original sentencing hearing. The rape, however, had been committed prior to that hearing.

**24.** This Court considers this question only as it affects the constitutionality of *Watson*'s resentencing order. The appropriateness of a particular resentencing court's use of recent aggravating circumstances within the circumstances of an individual case is properly left to separate actions.

ing court to consider aggravating circumstances of which the original court was unaware in no way "change[s] the quantum of punishment attached to the crime." *Dobbert v. Florida*, 432 U.S. at 293–94, 97 S.Ct. at 2298–99. *See also Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). Nor can this procedure, when compared *"in toto"* with the changes effected by *Watson*, be "fairly characterized as more onerous." *Id.* at 294, 97 S.Ct. at 2299. The resentencing court can consider not only a greater variety of mitigating circumstances than was permissible prior to *Watson*, but it can also consider mitigating circumstances that may have come to light since a petitioner's first sentencing.

## SPEEDY SENTENCING

Several petitioners argue that the circumstances of their cases are such that resentencing pursuant to *Watson* infringed their rights to speedy sentencing [25] and/or due process. These arguments are based on allegations that events have transpired since petitioners were originally sentenced which make resentencing unfair. The allegations include the death or unavailability of mitigation witnesses, excessive delay, and oppressive presentence conditions. One Petitioner argues that during resentencing the court considered a prior felony conviction that, because of a plea bargain, was not considered by the original sentencing court.[26]

Without commenting on the merits of any of the above contentions, this Court concludes that petitioners' speedy sentencing and/or due process arguments would be more appropriately handled in separate actions for the reasons that resolution of such issues would require consideration of the individual circumstances of each case.

25. *See generally* R. MISNER, *Resentencing to Death under State v. Watson: A Denial of the Right to a Speedy Trial*, 2 Ariz.St.L.J. 137 (1979).

### ORDER

In accordance with the above Opinion,

IT IS ORDERED that this Court's Order of May 12, 1978, enjoining respondent from imposing the death penalty is hereby vacated, and the petition for writ of habeas corpus is dismissed.

So that petitioners may have time to appeal the Court's decision in this matter,

IT IS FURTHER ORDERED that respondent is enjoined from imposing the death penalty on any of the petitioners in the above entitled and numbered cause of action for a period of sixty (60) days from the date of entry of this Order, at which time this injunction will expire without further action by this Court.

26. *See* response of Petitioner Valencia.